IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN L. SCOTT,  :
MINNIE L. SCOTT,
  Plaintiffs  :

  vs.            CIVIL NO. 1:CV-10-0581

LTS BUILDERS LLC, et al.,  :

  Defendants  :

*M E M O R A N D U M*

I. *Introduction*

  This is a diversity action controlled by Pennsylvania law. We are considering whether we should grant the motion of defendant, LTS Builders LLC, to compel arbitration of the claims against it. We have decided that we must compel arbitration of those claims and stay this action as against the other defendants while the arbitration proceeds.

II. *Background*

  Plaintiffs, John L. Scott, and Minnie L. Scott, filed this action against multiple defendants following the purchase of a lot in a real estate development in Pike County, Pennsylvania. Plaintiffs intended to build a retirement residence there. To that end, the plaintiff husband entered into a real estate sales agreement with defendant, LTS Realty Company, to purchase the lot and also entered into a construction agreement with defendant, LTS Builders LLC, to construct a house on the lot. Other "LTS defendants" are Rene Giombetti, an agent for LTS Realty Company, who sold the lot to Plaintiffs; Michael V. Gazza, a broker for LTS Realty Company; and Lawrence T. Simon, an officer

and agent for both LTS Realty Company and LTS Builders.  The remaining defendants are: Investors Abstract, Inc., and Steve Paugh and Lorie A. Lehman, agents for Investors Abstract; Albert C. Read, III, doing business as AC Read Appraisal Service; Alicia N. Johnson, who worked for Read; and M.D. Everett, the owner of the lot.

Plaintiffs allege that the defendants participated in a scheme to knowingly conceal from them the existence of an easement in favor of PPL Electric Utilities Corporation on the property and that, moreover, shortly after their purchase of the property PPL intended to expand its use of the easement.  (Second Am. Compl. ¶¶ 49-52).  The easement "rendered at least a third of the lot unbuildable."  (*Id.* ¶ 27).  Before the real estate sales agreement and the construction agreement were executed, Plaintiffs had "asked defendant Giombetti if there were any restrictions on building on the lot, and defendant said no."  (*Id.* ¶ 25).  Additionally, when Plaintiffs explained to Giombetti how they wanted to position the house so it would face out onto a scenic valley forest, he said "there would be no problem and that the entire parcel was available for improvement."  (*Id.* ¶ 26).  However, Plaintiffs' desired placement of the home would have actually put it on a portion of the PPL easement.  (*Id.* ¶ 54).  John L. Scott signed both contracts on March 15, 2008, a Saturday, the same day Plaintiffs saw the lot for the first time.  Giombetti had represented that "valuable 'perks' for new home buyers would be ending that weekend and they would need to sign a sales agreement before they left the office to obtain those 'perks.'"  (*Id.* ¶ 20).

The LTS defendants handled the arrangements for obtaining a loan, an abstract of title, a title policy and a survey endorsement.  (*Id.* ¶ 41).  Plaintiffs allege that the defendants knew that Plaintiffs were relying on them to guide them through the purchase of the lot and the new home.  (*Id.* ¶ 64).  Plaintiffs closed on the deal on May 8, 2008.  Defendants induced Plaintiffs to enter in these transactions.  (*Id.* ¶ 67).

Plaintiffs allege that the Investor Abstract defendants conducted a "deceptive, misleading and fraudulent title search" that "buried the easement in their [title] report," (*id.* ¶¶ 42-43), and affirmatively misrepresented that there were no "adverse easements." (*Id.* ¶ 57). Defendants Read and Johnson prepared "a deceptive, misleading and fraudulent appraisal." (*Id.* ¶ 45).

Plaintiffs make the following claims: (1) in Count I a claim against all defendants under Pennsylvania law for common-law fraud; (2) in Count II a claim against all defendants for a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection law, 73 Pa. Con. Stat. Ann. §§ 201-1 to 201-9.3 (West 2008); (3) in Count III a claim against all defendants except Everett for negligent misrepresentation; and (4) in Count IV a claim for rescission against Everett and the LTS defendants.

The construction agreement between John L. Scott and LTS Builders contains the following arbitration provision, entitled "Dispute Resolution." LTS Builders is the "Contractor" and John L. Scott is the "Owner."

> Contractor and Owner agree to submit any disputes arising under this Agreement or any Amendment thereto, to arbitration in Stroudsburg, Monroe County, Pennsylvania, in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. The foregoing Rules are adopted for procedural purposes to govern the arbitration process. Notwithstanding their adoption, any arbitration hereunder shall be deemed to be statutory arbitration under the Pennsylvania Uniform Arbitration Act, 42 Pa.C.S.A. Sec. 7301, et seq., and the substantive rights of the parties shall be governed by the foregoing Act; however, Contractor reserves the right, at its sole option, to cause any claims, disputes, and other matters arising out of or relating to promissory notes, accounts receivable, mortgages or other financial claims by Contractor against Owner to be decided by litigation in the Court of Common Pleas of Monroe County, Pennsylvania.

(Doc. 31-2, construction agreement, ¶ 19, Ex. B, Second Am. Compl., CM/ECF p. 5).

III.     *Discussion*

Defendant, LTS Builders, moves to compel arbitration of the claims against it on the basis of the arbitration clause in the construction agreement.

This is a diversity case, and neither party asserts that interstate commerce is involved, so we will apply Pennsylvania law to determine whether the claims against LTS Builders should go to arbitration. *See Eisenberger v. Chesapeake Appalachia, LLC*, No. 09-1415, 2010 WL 457139, at *2 (M.D. Pa. Feb. 4, 2010). In any event, both parties rely on Pennsylvania law.

Under Pennsylvania law, the court determines if an agreement to arbitrate exists and whether a particular dispute comes within the arbitration provision. *Huegel v. Mifflin Constr. Co., Inc.*, 796 A.2d 350, 354 (Pa. Super. 2002).

In opposing arbitration, Plaintiffs first argue that the claims against LTS Builders do not come within the scope of the arbitration clause because that clause narrowly covers only disputes "arising under" the construction agreement, and Plaintiffs have no dispute with LTS Builders about the actual construction of the house, only a dispute arising from their having been illegally induced into entering into the real estate sales agreement. We disagree. As recited above, the complaint makes claims based upon being induced to enter into the construction agreement. In further support of this argument, Plaintiffs contend the rescission count does not seek rescission against LTS Builders. We disagree. The "LTS Defendants" are named in that count, defined in the complaint to include LTS Builders. (Second Am. Compl. ¶ 7). Further, Pennsylvania law extends the scope of an arbitration clause covering disputes "arising under" the contract to claims asserting fraud in the inducement. *See Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000)("when phrases such as 'arising under' and 'arising out of' appear in

4

arbitration provisions, they are normally given broad construction, and are generally construed to encompass claims going to the formation of the underlying agreements").

Plaintiffs next argue that they cannot be compelled to arbitrate because the arbitration clause is unconscionable. Pennsylvania will not enforce an unconscionable contractual provision. *Salley v. Option One Mortgage Corp.*, 592 Pa. 323, 331, 925 A.2d 115, 119 (2007). The burden is on the party challenging the provision to show that it is unconscionable, *id.* at 119-20, 925 A.2d at 331-32, and the issue is one to be decided by the court. *Id.* To be unenforceable the provision must be both procedurally unconscionable and substantively unconscionable. *Id.*, 925 A.2d at 331.

"Procedural unconscionability refers specifically to 'the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language.' *Harris [v. Green Tree Fin. Corp.,* 183 F.3d 173, 181 (3d Cir. 1999)]. Substantive unconscionability looks to whether the arbitration provision 'unreasonably favors the party asserting it.' [quoting *Salley*, *supra*, 592 Pa. at 331, 925 A.2d at 119]." *Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 228 (3d Cir. 2008).

Plaintiffs argue the arbitration clause is unenforceable because the construction agreement is a contract of adhesion in that they had no choice but to accept the terms LTS Builders had included. We need not address this argument. If a contract is one of adhesion, it may satisfy the burden of showing procedural unconscionability, but merely because a contract is one of adhesion does not render it unconscionable because it must also be shown that it was substantively unconscionable. *Huegel*, *supra*, 796 A.2d at 357. *See also Salley*, *supra*, 592 Pa. at 344, 925 A.2d at 127 ("merely because a contract is one of adhesion does not render it unconscionable and unenforceable as a matter of law"). Plaintiffs also argue the clause is procedurally unconscionable because

5

of the manner in which the defendants induced John L. Scott to execute the construction agreement. They also complain about the size of the font. Again, we need not address this issue because Plaintiffs must also show that the clause was substantively unconscionable.

We do not believe Plaintiffs can make the latter showing. Plaintiffs argue that the clause is substantively unconscionable because it "allows LTS Builders to litigate in court a whole series of issues at their sole option." (Doc. 45, Pls.' Opp'n Br. at p. 20, CM/ECF p. 26). They rely on *DePrizio v. LTS Realty Co.*, No. 05-2273, 2008 WL 169640, (M.D. Pa. Jan. 16, 2008). However, *DePrizio* is distinguishable. In that case, the arbitration clause in the LTS Builders construction agreement was far broader than the clause at issue here. In *DePrizio*, the clause read as follows, in pertinent part: "Contractor reserves the right, at its sole option, to cause all claims, disputes, and other matters in questions arising out of or relating to this Agreement, or any amendment thereof, to be decided by litigation in the Court of Common Pleas of Monroe County, Pennsylvania." *DePrizio v. LTS Realty Co.*, No. 05-2273 (M.D. Pa.)(Doc. 20, CM/ECF p. 17). The clause was found to be unconscionable because it "reserved to the defendants alone an option for judicial remedies in every instance." 2008 WL 169640, at *2. Here, in contrast, the clause reserves judicial remedies for LTS Builders only for "any claims, disputes, and other matters arising out of or relating to promissory notes, accounts receivable, mortgages or other financial claims" that LTS Builders has against Plaintiffs. This does not by itself establish that the clause is unreasonably favorable to LTS Builders, the drafter. *See Salley*, *supra*, 592 Pa. at 344-45, 925 A.2d at 127-28 (reservation of certain remedies for a judicial forum, largely creditor remedies related to foreclosure, is not by itself unconscionable).

We observe in this regard that the burden of establishing unconscionability is on Plaintiffs, and they have proffered no facts to support the conclusion that the clause unreasonably favors LTS Builders. Their position essentially is that the clause is substantively unconscionable as a matter of law simply because LTS Builders retains the option of judicial remedies on certain financial claims. This is a position the Pennsylvania Supreme Court rejected in *Salley*. *See Zimmer*, *supra*, 523 F.3d at 230-31 (observing in dictum that *Salley* rejected the presumption that unequal access to the courts in and of itself rendered an arbitration clause unconscionable but that *Salley* left open the possibility of such a conclusion depending upon the circumstances of the case).

We must therefore compel arbitration of the claims against LTS Builders. This means we must stay the claims against the other defendants until the arbitration proceedings are finished. *See* 42 Pa. Con. St. Ann. § 7304(d)(West 2007)("An action or proceeding, allegedly involving an issue subject to arbitration, shall be stayed if a court order to proceed with arbitration has been made or an application for such an order has been made under this section."). *See also Sew Clean Drycleaners & Launders, Inc. v. Dress For Success Cleaners, Inc.*, 903 A.2d 1254, 1258 (Pa. Super. 2006)(court action against the party not subject to the arbitration agreement should have been stayed under section 77304(d) pending the resolution of the arbitration proceedings); *Neuber Envtl. Services, Inc. v. Warner Jenkinson Co.*, No. 05-3074, 2005 WL 1941318, at *1 (E.D. Pa. Aug. 11, 2005)(both federal and state law require a stay of the court action while a case is arbitrated).

We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: March 15, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN L. SCOTT,  :
MINNIE L. SCOTT,
    Plaintiffs  :
   :
    vs.      CIVIL NO. 1:CV-10-0581
   :
LTS BUILDERS LLC, et al.,  :

    Defendants  :

*O R D E R*

AND NOW, this 15th day of March, 2011, it is ordered that:

   1. The motion of defendant, LTS Builders, to compel arbitration of plaintiff, John L. Scott's, claims against it is granted.

   2. This action is stayed pending resolution of arbitration proceedings.

       /s/William W. Caldwell
       William W. Caldwell
       United States District Judge