IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN L. SCOTT,                          :
MINNIE L. SCOTT,                        :
       Plaintiffs              :
                                          :
       v.                       :        CIVIL NO. 1:10-CV-0581
                                          :
LTS BUILDERS LLC, et al.,                :
       Defendants               :

*M E M O R A N D U M*

I.   *Introduction*

      Plaintiffs sued a number of defendants alleging fraud and negligent misrepresentation in connection with a real estate sales agreement and a construction agreement.  The construction agreement contained an arbitration clause, and we ordered Plaintiffs to arbitrate their claims against the only defendant who was a party to that contract.  We also stayed this action as against the remaining defendants pending resolution of the arbitration.

      Plaintiffs have filed a motion for reconsideration of those rulings.  We have decided that arbitration should not be required in this case and that we should proceed to adjudicate the pending motions to dismiss.

II.   *Pertinent Procedural History*

      This is a diversity action controlled by Pennsylvania law.  Plaintiffs, John L. Scott, and Minnie L. Scott, husband and wife, filed this action against multiple defendants following the purchase of a lot in a real estate development in Pike County,

Pennsylvania.  Plaintiffs intended to build a retirement residence there.  To that end, the plaintiff husband entered into a real estate sales agreement with defendant, LTS Realty Company, to purchase the lot and also entered into a construction agreement with defendant, LTS Builders LLC, to construct a house on the lot.[1]  Other "LTS defendants" are Rene Giombetti, an agent for LTS Realty Company, who sold the parcel to John L. Scott; Michael V. Gazza, a broker for LTS Realty Company; and Lawrence T. Simon, an officer and agent for both LTS Realty Company and LTS Builders.  The remaining defendants are: Investors Abstract, Inc., and Steve Paugh and Lorie A. Lehman, agents for Investors Abstract; Albert C. Read, III, doing business as AC Read Appraisal Service; Alicia N. Johnson, who worked for Read; and M.D. Everett, the owner of the lot.

The gravamen of Plaintiffs' second amended complaint is fraud, that all of the defendants participated in a scheme to knowingly conceal from Plaintiffs the existence of an easement in favor of PPL Electric Utilities Corporation on the property. The easement allegedly rendered at least a third of the lot unbuildable and even prevented construction of the house on a portion of the lot where Giombetti said the house could be placed.

The defendants filed motions to dismiss under Fed. R. Civ. P. 12(b)(6) as follows: (1) one by the LTS defendants (which also relied on Fed. R. Civ. P. 12(b)(1));

---

[1]   It is unclear why Minnie L. Scott is a plaintiff, but that has no bearing on our resolution of the pending motions.

(2) one by Investors Abstract, Inc., Steve Paugh, and Lorie A. Lehman; (3) one by Albert C. Read, III, and Alicia N. Johnson; and (4) one by M.D. Everett.

The LTS defendants' motion to dismiss under Rule 12(b)(1) argued lack of jurisdiction over the claims against LTS Builders on the basis of an arbitration clause in the construction agreement and requested that the complaint be dismissed as against LTS Builders.  On March 15, 2011, we agreed with that argument but instead of dismissing the claims against LTS Builders, we treated the motion as one to compel arbitration and ordered Plaintiffs to arbitrate their claims against LTS Builders.  We also stayed the action against the other defendants while the arbitration was ongoing.  *See Scott v. LTS Builders LLC*, 2011 WL 902422, at *4 (M.D. Pa.).

Plaintiffs moved to reconsider our ruling.  They argued we erred procedurally because a decision on whether to compel a party to arbitrate a dispute has to be decided under Fed. R. Civ. P. 56, governing motions for summary judgment, where the party resisting arbitration could present evidence why arbitration should not take place.  They also presented evidence that they could not afford the cost of pursuing their claims against LTS Builders in arbitration.

By order of July 12, 2011, we vacated the March 15 order and requested additional briefing on the arbitration issue.  The parties complied with that request, and as noted above, we have decided that arbitration should not be required.  Our decision to reject arbitration means that we must also consider the motions to dismiss.

The second amended complaint provides the background to resolving the arbitration issue and the motions to dismiss.  We provide it below.

III.   *Background*

Plaintiffs allege as follows.  On March 15, 2008, a Saturday, they were traveling westbound on I-80 from New York to Pennsylvania and saw billboards advertising LTS homes in the Poconos area.  (Second Am. Compl. ¶ 18).  They drove to the LTS offices and discussed purchasing an LTS-built home with Giombetti.  (*Id.* ¶¶ 19 and 20).  Giombetti told them that "valuable 'perks' for new home buyers would be ending that weekend and they would need to sign a sales agreement before they left the office to obtain those 'perks.'"  (*Id.* ¶ 20).

The lot, in Saw Creek Estates, was on a corner, "located up a large hill," and "provided a scenic view of a valley forest descending between nearby mountainous hills."  (*Id.* ¶ 22).  It had "a large stand of trees and an old stone fence."  (*Id.* ¶ 23).  "[B]uffered from view by the stand of trees, [a] power transmission line . . . ran along the south east side of the lot approximately 75 to 100 feet from what appeared to be the end of the property line, demarcated by a clearing."  (*Id.*).

"Plaintiffs asked defendant Giombetti if there were any restrictions on building on the lot, and defendant said no."  (*Id.* ¶ 25).  "Plaintiffs explained to Giombetti how they wanted to position the [house] so it would face out toward the valley forest and defendant Giombetti said "there would be no problem and that the entire parcel was

4

available for improvement.  He even agreed that plaintiffs' proposed location would be ideal."  (*Id.* ¶ 26)(brackets added).

Giombetti prepared the form sales agreement for the lot, the "Agreement for the Sale of Real Estate."  The agreement did not identify Everett, the seller, only Scott as the buyer.  (*Id.* ¶ 35).  It did identify LTS Realty Company as the seller's agent.  (*Id.* ¶ 37).  The LTS defendants prepared the construction agreement between LTS Builders and John Scott.  (*Id.* ¶ 40).  On March 15, 2008, John L. Scott signed both contracts, the same day Plaintiffs saw the lot for the first time.

The real estate agreement contained the following clause, dealing with "Representations," providing as follows, in pertinent part:

> (A) In entering into this Agreement, Buyer has not relied upon any representations, claims, advertising, promotional activities, brochures or plans of any kind made by the Seller, Agents, or their employees unless expressly incorporated or stated in this Agreement.
>
> (B) It is understood that Buyer has inspected the property, or hereby waives the right to do so, and has agreed to purchase it in its present condition. . . .
>
> (C) It is further understood that this Agreement contains the whole Agreement between Seller and Buyer and there are no other terms, obligations, covenants, representations, statements or conditions oral or otherwise of any kind whatsoever concerning this sale.

(Doc. 31-1, Second Am. Compl., Ex. A, ¶ 16(A) and (C).

The construction agreement contained an arbitration clause requiring John L. Scott and LTS Builders to submit "any disputes arising under" the "Agreement" "to

arbitration . . . ." (Doc. 31-2, Second Am. Compl., Ex. B, ¶ 19). It also contained a

clause dealing with "Representations," providing as follows:

> Owner [John Scott] acknowledges that the Contractor [LTS Builders] has made no warranties or representations that are not set forth in writing. In entering into this Agreement, Owner has not relied upon any claims . . . of any kind made by the Contractor, unless expressly incorporated or stated in this Agreement. It is further understood that this Agreement contains the whole Agreement between Owner and Contractor and there are no other terms, obligations, covenants, statements or conditions oral or otherwise of any kind whatsoever concerning this Agreement.

(*Id.*, Ex. B, ¶ 21).

The LTS defendants handled the arrangements for obtaining a loan from

HSBC Mortgage Corporation, an abstract of title, a title policy, a survey endorsement,

and for closing on the purchase. (*Id.* ¶ 41). Plaintiffs allege that the defendants knew

that Plaintiffs were relying on them to guide them through the purchase of the lot and the

new home. (*Id.* ¶ 64). Plaintiffs closed on the deal on May 8, 2008. Defendants induced

Plaintiffs to enter into these transactions, including the closing. (*Id.* ¶¶ 66 and 67).

Plaintiffs allege that the LTS defendants and Everett arranged for the

Investor Abstract defendants to conduct a "deceptive, misleading and fraudulent title

search" that "buried the easement in their [title] report," (*id.* ¶¶ 42-43), and affirmatively

misrepresented that there were no "adverse easements." (*Id.* ¶ 57). LTS arranged for

defendants Read and Johnson "to prepare a deceptive, misleading and fraudulent

appraisal." (*Id.* ¶ 45). The appraisal report "affirmatively misrepresented that the

property was not subject to adverse easements or encroachments and that there were

6

no physical deficiencies or conditions that would adversely affect value."  (*Id.* ¶ 57).  It also improperly used comparable sales, identifying only three of them with two of them not in Saw Creek Estates.  (*Id.* ¶¶ 59 and 60).

Giombetti and the other defendants knew that "the power transmission line ran along a 200' foot wide easement that rendered at least a third of the property unbuildable."  (*Id.* ¶ 27).  The LTS defendants knew "that PPL had a project to expand its power line transmission to add a massive 500 additional kilovolts."  (*Id.* ¶ 49). Defendants knew this project would: (1) replace the current lines with 200' foot poles carrying 720 kilovolts, (*id.* ¶ 50); and (2) expand the use of the easement on the lot.  (*Id.* ¶ 51).  They also knew the easement encroached on at least one-third of the lot, severely reducing its value and marketability.  (*Id.* ¶ 52).  Moreover, "[d]efendants knew or recklessly disregarded the fact that plaintiffs sought to site the home on a portion of [the lot] that was encumbered by the PPL easement."  (*Id.* ¶ 54).

"In reliance on the aforesaid acts and omissions of defendants, plaintiffs proceeded with closing on May 9, 2008."  (*Id.* ¶ 66).  The next month:

> plaintiffs learned for the first time that [the lot] was so severely encumbered by the PPL easement that they would not be able to situate the house as previously represented by defendant Giombetti.  Moreover, plaintiffs learned for the first time that virtually the entire stand of trees that served as a barrier between the existing power line and the lot were to be cut down by PPL in anticipation of expanding the power line transmission.  The Lot was so encumbered by the easement that it could not be improved to have a back porch, garden, or basketball net as planned.

(*Id.* ¶ 75).

In June 2007, Everett had purchased the lot for $20,000.  (*Id.* ¶ 30).  The owner before Everett had paid $46,800 for it in 1990.  (*Id.* ¶ 29).  Everett was "a real estate speculator, married to Stanley Kenosky, also involved in real estate sales in the Poconos."  (*Id.* ¶ 31).  "Defendant Everett had a long standing relationship with the Investor's Abstract defendants in that Everett repeatedly used Investor Abstract as title and settlement agents."  (*Id.* ¶ 32).

Plaintiffs make the following four claims.  In Count I, they make a claim against all defendants for common-law fraud.  Plaintiffs allege that the defendants knowingly or recklessly made the misrepresentations or aided and abetted each other in making them and that Plaintiffs relied on these misrepresentations in  buying the land and entering into the construction contract.  In Count II, they make a claim against all defendants for a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (CPL).  73 Pa. Stat. Ann. §§ 201-1 to 201-9.3 (West 2008).  They allege the defendants engaged in, or aided and abetted, unfair and deceptive acts and practices by knowingly or recklessly making false statements of material fact.  In Count III, they make a claim against all defendants except Everett for negligent misrepresentation, alleging that they knew, or should have known, that Plaintiffs and the lender, HSBC, were relying on the information supplied to engage in the transactions on the lot.  In Count IV, they make a claim for rescission against Everett and the LTS defendants.

IV.   *Discussion*

   A.  *LTS Builders Cannot Enforce the Arbitration Clause in the*
       *Construction Agreement Because Plaintiffs Have Sued Multiple*
       *Parties on the Same Set of Facts Who Are Not Obligated to Arbitrate*

  LTS Builders asks us to send Plaintiffs' claims against it to arbitration pursuant to the arbitration clause in the construction agreement.  Plaintiffs counter that arbitration is not proper for two reasons.  First, Pennsylvania will not enforce unconscionable arbitration clauses, and the arbitration clause at issue is unconscionable for several reasons, among them that Plaintiffs are financially incapable of pursuing an arbitration against LTS Builders.  Second, Pennsylvania courts do not enforce arbitration clauses when, as here, a plaintiff also has claims arising from the same set of facts against several defendants who are not bound by an arbitration agreement.  We agree with the latter argument and hence need not address whether the clause is unconscionable.

  The lead case is *School District of Philadelphia v. Livingston-Rosenwinkel, P.C.*, 690 A.2d 1321 (Pa. Commw. Ct. 1997).  In that case, Livingston-Rosenwinkel ("L-R"), the defendant architectural firm, had contracted with the plaintiff school district to provide architectural services for the construction of a high school.  The school district sued for breach of contract and negligence, claiming deficiencies in the defendant's performance.  The defendant joined six other entities as additional defendants, including Furlow Associates.  Furlow filed preliminary objections to its joinder, contending that its agreement with L-R required arbitration of any disputes between them.  It sought

9

dismissal of the joinder complaint against it and an order requiring L-R to arbitrate its claims against Furlow.  The trial court denied the objections.

On appeal, the Pennsylvania Commonwealth Court affirmed for two reasons.  One of them was based on public policy.[2]  The court noted that Pennsylvania enforces arbitration agreements "as a means of promoting swift and orderly disposition of claims."  *Id.* at 1322-23 (cited cases omitted).  It concluded that forcing L-R to arbitrate its claims against Furlow would frustrate this purpose because L-R would be litigating the same claims twice "before two different fact-finders," something "uneconomical for the court as well as the parties involved" and which would result in a "protracted, piecemeal disposition of the dispute."  *Id.* at 1323.  The court said that "[u]nder these circumstances, public policy interests are best served by joinder, which would allow for resolution of the involved disputes at one time with all parties present."  *Id.*

This rationale indicates that we should not require arbitration of John Scott's claims against LTS Builders in this case.  To do so would not serve Pennsylvania's policy of using arbitration for the swift and orderly disposition of claims.  Plaintiffs have sued eleven defendants, raising the same claims based on the same set of facts.  LTS Builders is the only defendant subject to an arbitration clause, and none of the other defendants have indicated a willingness to submit to arbitration.  Indeed, five of

---

[2]     The other was based on the particular facts and procedural history of the case. The case had been brought by the school district, which was not a party to the L-R agreement and not bound by the arbitration clause.  Further, the defendant was exercising a right to join Furlow as an additional defendant under Pa. R. Civ. P. 2252, a procedural rule authorizing the joinder of additional defendants which contained no exception for claims subject to arbitration. *Id.* at 1323.

them have indicated by way of two amicus briefs (doc. 63 and 64) on Plaintiffs' motion for reconsideration that they want us to adjudicate their motions to dismiss.  LTS Builders has also stated that we should resolve the motions to dismiss as they relate to the other defendants, reserving only the claims against it for arbitration.  In these circumstances, we will deny the request of LTS Builders for arbitration.

In reliance on *Livingston-Rosenwinkel*, other courts have reached the same conclusion in similar circumstances.  *See Utecht v. Fieldstone Partners L.P.*, 2010 WL 7057996 (Pa. Common Pleas Ct. - Chester Cnty. 2010)(Nagle, J.)(petition by some defendants to compel arbitration against plaintiff home buyers based on arbitration clause in agreement of sale was denied as it would create two cases, one in court against certain defendants not subject to the arbitration clause and one in arbitration against the defendants seeking arbitration).  *See also Kiesel v. Lehigh Valley Eye Center P.C.*, 79 Pa. D.&C.4th 432, 435 (Pa. Common Pleas Ct. - Lehigh Cnty. 2006)(arbitration clause in employment agreement would not be enforced against the ex-employee plaintiff as it would leave the individual defendant in court while the case against the corporate defendant went to arbitration); *Lichtman v. Taufer*, 2004 WL 1632574, at *3 (Pa. Common Pleas Ct. - Phila. Cnty. 2004); *Stanley-Laman Group, LTD. v. Hyldahl*, 2007 WL 5090632 (Pa. Common Pleas Ct. - Chester Cnty. 2007)(Cody, J.); *1930-34 Associates, L.P. v. BVF Const. Co., Inc.*, 2006 WL 1462932, at *3 (Pa. Common Pleas Ct. - Phila. Cnty. 2006); *Univ. Mech. & Eng'g Contractors Inc. v. Ins. Co. of N. Am.*, 2002 WL 31428913, at *5 (Pa. Common Pleas Ct. - Phila. Cnty. 2002), *aff'd*, 839 A.2d 1172

(Pa. Super. Ct. 2003), *petition for allowance of appeal denied*, 579 Pa. 692, 856 A.2d 834 (2004).

In opposition, LTS builders relies on *Dodds v. Pulte Home Corp.*, 909 A.2d 348 (Pa. Super Ct. 2006), but that case is distinguishable.  In *Dodds*, the superior court did hold that the case had to go to arbitration even though one of the defendants was not a signatory to the agreement containing the arbitration clause.  However, in *Dodds* the plaintiff home buyers added as a defendant the parent corporation to the company that had agreed to build their homes and then argued the arbitration clause could not be enforced because the parent corporation was not a signatory to the agreement.  The superior court rejected the argument, reasoning that "[a]n arbitration agreement would be of little value if a party could obviate the effect of the agreement merely by finding a way to join another party."  *Id.* at 352.  Moreover, the parent corporation wanted to enforce the arbitration clause, leading the court to rule that a signatory to the agreement should not be able to avoid arbitration "when the non-signatory *wants* to arbitrate."  *Id.* (emphasis in original).  In contrast, in this case, there is no indication that Plaintiffs sued the other defendants merely in an attempt to avoid the arbitration clause; Plaintiffs have made meaningful claims against them.  Additionally, the other defendants here do not want arbitration.

We will therefore not send the claims against LTS Builders to arbitration. We turn now to the merits of the motions to dismiss.[3]

B.  *Standard of Review on a Motion to Dismiss*

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.,* 600 F.3d 286, 291 (3d Cir. 2010)(quoted case omitted).  The court is not limited to evaluating the complaint alone.  It may consider documents that form the basis of a claim.  *Lum v. Bank of America,* 361 F.3d 217, 221 n.3 (3d Cir. 2004).  It may also consider "documents whose contents are alleged in the complaint and whose authenticity no party questions," even though they "are not physically attached to the pleading . . . ."  *Pryor v. Nat'l Collegiate Athletic Ass'n,* 288 F.3d 548, 560 (3d Cir. 2002).

A complaint has to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  Detailed factual allegations are not required, *id.* at 555,

---

[3]    In our previous memorandum, we decided that Pennsylvania law required a stay of the action while the arbitration proceeded.  2011 WL 902422, at *4.  In part, we relied on *Sew Clean Drycleaners & Launders, Inc. v. Dress For Success Cleaners, Inc.,* 903 A.2d 1254, 1258 (Pa. Super. Ct. 2006).  A closer reading of that case indicates that the court required a party to move for the stay before one was imposed.  *Id.* at 1258-59 (directing issuance of a stay on remand "upon motion of a party").  Here no party has moved for a stay, and even if one did, *Livingston-Rosenwinkel* supports denial of a stay and retention of the claims against all defendants.

127 S.Ct. at 1964; *Pryor, supra,* 288 F.3d at 564, only a "short and plain statement" showing the right to relief. *Pryor, supra,* 288 F.3d at 564 (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) and quoting Fed. R. Civ. P. 8(a)(2)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662,, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. at 1965). "[M]ore than labels and conclusions" are required. *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964–65. In addition, allegations of fraud must be pled with particularity. *Lum, supra,* 361 F.3d at 223.

C.  *The Motion to Dismiss of the LTS Defendants*

1.  *The Parole Evidence Rule Does Not Bar the Claims*

The LTS defendants move to dismiss the claims against them on several grounds.[4]  Noting that all three of Plaintiffs' claims are based on misrepresentations, either intentional or negligent, they first argue that the claims are barred by the parol evidence rule based on the merger clauses in each contract.

Defendants recognize the exception to the parol evidence rule for real estate inspection cases created in *LeDonne v. Kessler,* 256 Pa. Super. 280, 389 A.2d

---

[4]  As noted, LTS defendants are LTS Builders; Rene Giombetti, the agent who sold the lot to John Scott and had him execute the construction agreement; Michael Gazza, a broker for LTS Realty Company; and Lawrence T. Simon, an officer and agent for both LTS Realty Company and LTS Builders.

1123 (1978), but maintain Plaintiffs cannot satisfy this exception.  In *LeDonne*, the

Pennsylvania Superior Court held that when a plaintiff alleges he was fraudulently

induced into entering into a real estate agreement, in determining whether to apply the

parol evidence rule, the court must:

> balance the extent of the party's knowledge of objectionable
> conditions derived from a reasonable inspection against the
> extent of the coverage of the contract's integration clause in
> order to determine whether that party could justifiably rely
> upon oral representations without insisting upon further
> contractual protection or the deletion of an overly broad
> integration clause.

*Id.* at 294, 389 A.2d at 1130.

Defendants assert that here the balance tips in favor of applying the parol

evidence rule to bar Plaintiffs' claims.  They rely on the title search Plaintiffs allege the

Investor Abstract defendants conducted, which revealed the existence of the easement

in the title report, albeit allegedly "buried" there.  Plaintiffs thus had knowledge of the

objectionable condition, the PPL easement, and therefore cannot pursue their three

misrepresentation claims, as the balance should be struck in Defendants' favor.

We reject this argument.  As Plaintiffs contend, John Scott entered into the

real estate agreement and the construction agreement on the basis of the alleged

misrepresentations of Giombetti, the sales agent.  At that time, no title search had been

conducted, so the title report could not have given Scott knowledge of the easement.

In connection with this argument, the LTS defendants also seem to be

arguing that Plaintiffs cannot establish an element of their claims, reliance on the

misrepresentations, because they settled on the purchase on May 9, 2008, when the title report was available to them.  We disagree that Defendants have shown that the title report contained sufficient detail about the easement to have put Plaintiffs on notice of the extent of the easement.

Aside from their specific reliance on the title report, Defendants also argue that Plaintiffs, in any event, cannot come within the *LeDonne* exception for the integration clause in the construction agreement.  This argument lacks merit.  As Plaintiffs point out, a reasonable inspection of the lot would not have revealed the existence of the PPL easement.  Additionally, as they allege, when directly asked if there were any restrictions on building on the lot, Giombetti falsely denied that there were, and also falsely stated that the entire parcel was available for improvement.  In analogous circumstances, courts have refused to apply the parol evidence rule, even in the presence, as here, of a broad merger clause.  *See Myers v. McHenry*, 398 Pa. Super. 100, 109, 580 A.2d 860, 864-65 (1990); *Mancini v. Morrow*, 312 Pa. Super. 192, 200-01, 458 A.2d 580, 584 (1983); *Jeffries-Baxter v. Incognito*, 2005 WL 2509238, at *6, 76 Pa. D.&C.4th 68 (Pa. Common Pleas Ct. - Phila. Cnty. 2005).  *See also Blumenstock v. Gibson*, 811 A.2d 1029, 1036-37, 1038 (Pa. Super. Ct. 2002)(applying the *LeDonne* exception but deciding that the balance tipped in favor of the seller); *Kostelaba v. Dart (In re Dart)*, 371 B.R. 75, 83 (Bankr. M.D. Pa. 2006); *Mattei v. Atlantic Richfield Co.*, 1998 WL 238465, at *2-3 (E.D. Pa.).

2. *Liability of the Individual LTS Defendants*

The individual LTS defendants, Giombetti, Gazza and Simon, move to dismiss the claims against them by arguing they cannot be liable simply because they were agents or officers for LTS Builders or LTS Realty.  They also maintain that they lack the personal involvement to impose tort liability on them.

In opposition, Plaintiffs do not assert that liability can be based on the individual defendants' status as officers or agents but argue that they are liable based on their personal participation in the torts.  *See Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 622, 470 A.2d 86, 90 (1983)(a corporate officer may be held liable for participation in the wrongful act).

Plaintiffs rely on the following acts.  For Giombetti, he acted on behalf of both the Plaintiffs and Everett on the day the agreements were executed.  For Gazza, he is "the broker of record for defendant LTS Realty Corp."  (Doc. 31, Second Am. Compl. ¶ 6).  For Simon, he "conceived, organized and designed" "the LTS 'family' approach where LTS defendants would be involved in each step of the process, guiding and controlling the transaction from start to finish, acting as lawyers, real estate agents, [and] loan agents . . . ."  (*Id.* ¶ 68).

Defendants' argument must be rejected as to defendant Giombetti.  He certainly had sufficient personal involvement since he negotiated the agreements with

Plaintiffs and made several of the alleged misrepresentations.[5]  However, as to the remaining individual defendants, the allegations are insufficient.  Plaintiffs argue that since Gazza is alleged to be the "broker of record" for LTS Realty, he controlled its sale policy and programs.  They also argue it can be inferred from his "broker of record" status that he knew about Giombetti's misrepresentations, or if he did not know about them, that he ratified them.  We disagree.  That Gazza is the broker of record for LTS Realty implies nothing about any personal participation he might have had in Giombetti's conduct or any control he might have had over LTS Realty's sales policy or programs, or even that he developed fraudulent sales policies or programs.

As for Simon, Plaintiffs have stated a valid theory of recovery against him, but the difficulty is that it does not meet federal pleading standards.  As Defendants point out, the allegations that Simon "conceived, organized and designed" the fraudulent way the LTS defendants sold houses are conclusional.  As noted above, Plaintiffs had to plead sufficient facts to show they have a plausible claim, not factual conclusions.

We will therefore dismiss the claims as against defendants Gazza and Simon.

---

[5]   Defendants attempt to distinguish Giombetti's situation by asserting he was just a sales representative, but they cite no authority for their argument that the alleged tortfeasor should elude liability simply because he was a sales representative.

3. *Punitive Damages and Attorney's Fees*

The LTS defendants move to dismiss: (1) the request for punitive damages in Count II, the CPL claim; in Count III, the negligent misrepresentation claim; and in Count IV, the restitution claim.  Since Plaintiffs agree that punitive damages are only recoverable in Count I, we will dismiss claims for punitive damages in Count II, III, and IV.  However, we will allow Plaintiffs to seek treble damages under Count II.  *See* 73 Pa. Stat. Ann. § 201-9.2(a).

The LTS defendants also argue that the claims for attorney's fees in Count I, III, and IV are improper.  Plaintiffs concede attorney's fees are not recoverable under Counts I, III and IV.  (Doc. 44, p. 16).  They add that attorney's fees are recoverable under Count II.  *See* 73 Pa. Stat. Ann. § 201-9.2(a).  We will therefore dismiss claims for attorney's fees under Counts I, II, and IV but allow them under Count II.[6]

D. *The Motion to Dismiss of Defendants, Investor's Abstract, Inc., Steve Paugh, and Lorie A. Lehman*

Investor's Abstract, Inc., Steve Paugh, and Lorie A. Lehman are named in the first three counts of the complaint.  Counts I and II are based on fraud and Count III on negligent misrepresentation.  Plaintiffs allege that these defendants participated in the scheme to fraudulently induce them into purchasing the lot and constructing the house. As their role in the scheme, the moving defendants conducted a "deceptive, misleading

---

[6]    Other defendants have made the same argument concerning punitive damages and attorney's fees in their own motions to dismiss.  Our resolution of the issue here disposes of their arguments.

and fraudulent title search" that "buried" the PPL easement in the title report.  They also

affirmatively misrepresented that there were no "adverse easements."  (Second Am.

Compl. ¶¶ 42-43, 57).

The defendants move to dismiss the claims against them, contending that

before Plaintiffs purchased the property, they were provided with a title insurance policy

from the insurer that listed in exception 16 the "Covenants, Conditions and Easements

as in Plot Book 21/20."  (Doc. 36-1, Ex. A, CM/ECF p. 7).  They were also provided with

a copy of Plot Book 21/20.  (*Id.*, CM/ECF p. 21).  The PPL easement was listed there.

Defendants therefore argue that Plaintiffs' claim fail because they had knowledge of the

easement, which defeats their claims for fraudulent and negligent misrepresentation.[7]

We reject this argument, at least at the motion-to-dismiss stage of the case.

First, Plaintiffs dispute the authenticity of the exhibit Defendants supply as part of their

argument.  They also dispute they were provided with any title-search information before

they closed on the deal.  Third, in any event, the court is unable to discern from the

exhibit submitted any description of the easement that would have put Plaintiffs on notice

of its quality and extent.

The defendants next move to dismiss the case as against Steve Paugh,

and Lorie A. Lehman, relying on the rule that an agent acting on behalf of a disclosed

principal is not liable for a contract made between the principal and third party unless the

---

[7]     Defendants do not specify which element(s) of the claims are not satisfied
although they cite authority that describes the elements of each claim.  *See Dawson v.
Dovenmuehle Mortg., Inc.*, 2002 WL 501499, at *6-7 (E.D. Pa.).  It appears that Defendants
are asserting Plaintiffs cannot show reliance or causation.  *Id.*

agent specifically assumes liability.  *See B&L Asphalt Indus., Inc. v. Fusco*, 753 A.2d 264, 270 (Pa. Super. Ct. 2000).  We reject this argument.  As Plaintiffs argue, they are not suing for breach of contract but for tort.  As noted above, corporate agents can be held personally liable for participation in tortious acts.  *See Wicks, supra,* 503 Pa. at 622, 470 A.2d at 90.

> E.  *The Motion to Dismiss of Defendants, Albert C. Read, III,*
>     *d/b/a AC Read Appraisal Service, and Alicia N. Johnson*

Read and Johnson first move to dismiss the claims against them on the basis of a lack of privity of contract between Plaintiffs and the moving defendants.  They attach to their motion to dismiss a copy of the appraisal report they prepared for HSBC, the mortgage lender.  (Doc. 37, Ex. B, CM/ECF p. 47).  The only signatories to this document are Read and Johnson and HSBC is listed as the "lender/client."  The report establishes, among other things, that the appraisal's "intended use" was "for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction."  (*Id.*, CM/ECF p. 53).  It also lists the lender/client as the "intended user."  (*Id.*).[8]  Based on this document, Read and Johnson argue that their obligation to produce an appraisal was contractual and ran only to HSBC.  They contend they therefore cannot be liable to Plaintiffs because there is no privity between them.[9]

---

[8]   In contrast, John Scott is identified as the "borrower/client."  (*Id.*, CM/ECF p. 49).

[9]   Since no party objects to Defendants' reliance on the appraisal report on a motion to dismiss, we will examine Defendants' argument in light of the report.

21

We are not convinced by Defendants' argument. It overlooks paragraph 21 of the report, which permits the lender/client to give the appraisal report to the borrower, and paragraph 23, which allows the borrower to rely on the report as part of a mortgage finance transaction.  (*Id.*, CM/ECF pp. 54, 55).  Defendants' argument does not preclude the borrower from being a third-party beneficiary of the agreement between them and HSBC.  We also note that the CPL claim does not require "strict" privity of contract.  *See Caciolo v. Masco Contractor Services East, Inc.*, No. 04-962, 2004 WL 2677170, at *3 (E.D. Pa. Nov. 22, 2004).

Defendants next argue that Plaintiffs fail to allege: (1) the specific acts of fraud or concealment that Read and Johnson committed; and (2) the specific acts of aiding and abetting they committed.  Defendants contend that Plaintiffs cannot rely on concealment of the transmission line because they allege that they saw the transmission line when inspecting the lot and that they cannot rely on concealment of the easement because the easement was revealed by the title search.  These arguments miss the mark.  Plaintiff's allegations concern the extent of the easement on the lot, which would not have been shown by the transmission lines or by the title-research documents made available to them.

Defendants also argue that Plaintiffs cannot show reliance as they purchased the land and entered into the construction agreement before the appraisal report was prepared.  As noted above, reliance is an element of fraud and negligent misrepresentation.  *Dawson, supra,* 2002 WL 501499, at *6-7.

We agree with Plaintiffs that this argument fails in light of the allegations of the second amended complaint.  Plaintiffs allege the defendants, including Read and Johnson, knew that the PPL project would replace the current transmission lines with 200' foot poles carrying 720 kilovolts, would expand the use of the easement on the lot, and that the easement encroached on at least one-third of the lot, severely reducing its value and marketability.  Moreover, the moving defendants knew or recklessly disregarded the fact that plaintiffs sought to site the home on a portion of the lot that was encumbered by the PPL easement.  Nonetheless, they prepared an appraisal that affirmatively misrepresented that the property was not subject to adverse easements or encroachments and that there were no physical deficiencies or conditions that would adversely affect value.  The report also improperly used comparable sales, identifying only three of them with two of them not in Saw Creek Estates.[10]  In reliance on the moving defendants' conduct in part, plaintiffs proceeded with closing on May 9, 2008.  Plaintiffs have therefore properly alleged reliance.

In addition, even if Plaintiffs had not alleged reliance on the actions of the moving defendants, Plaintiffs also have alleged sufficient liability based on aiding and abetting.  *See Sovereign Bank v. Valentino*, 914 A.2d 415, 421 (Pa. Super. Ct. 2006).

---

[10]   In their reply brief, Defendants challenge that Plaintiffs have alleged the report was fraudulent.  However, we believe the allegations are sufficient at the pleading stage.

F.  *The Motion to Dismiss of Defendant, M.D. Everett*

The defendant seller of the lot, M.D. Everett, has moved to dismiss the fraud and negligent misrepresentation claims against her principally on the following two grounds: (1) there are no allegations against her that she made any misrepresentations or otherwise participated in any fraudulent conduct; and (2) under the *LeDonne* balancing test, discussed above in connection with the LTS defendants motion to dismiss, the parol evidence rule bars the claims against her.  *See LeDonne*, *supra*, 256 Pa. Super. at 294, 389 A.2d at 1130.

We reject these arguments.  As Plaintiffs point out, the LTS defendants were the agents of Everett in the sale of the lot to John Scott.  Everett, as the principal, is liable for the acts of her agents in this real estate transaction, even if she was unaware of the alleged fraudulent acts.  *Baker v. Cambridge Chase, Inc.*, 725 A.2d 757, 769 (Pa. Super. Ct. 1999)(quoting *Aiello v. Ed Saxe Real Estate*, 508 Pa. 553, 562, 499 A.2d 282, 287 (1985)); *Roberts v. Estate of Barbagallo*, 366 Pa. Super. 559, 571-72, 531 A.2d 1125, 1131-32 (1987).  And we have already decided that *LeDonne* balancing test allows the fraud and negligent misrepresentation claims to proceed.

We will issue an appropriate order.

 /s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: December 15, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN L. SCOTT,                          :
MINNIE L. SCOTT,                        :
   Plaintiffs              :
        :
   v.                       :  CIVIL NO. 1:10-CV-0581
        :
LTS BUILDERS LLC, et al.,               :
   Defendants              :

*O R D E R*

AND NOW, this 15th day of December, 2011, it is ordered that:

1.  Plaintiff's motion (Doc. 53) for reconsideration of the order of March 15, 2011, (Doc. 52), compelling arbitration and staying the action is granted.

2.  The motion (Doc. 35) of defendant, LTS Builders, to dismiss the claims against it on the basis of the arbitration agreement is denied.

3.  The motion (Doc. 35) to dismiss of the LTS defendants is granted in part and denied in part.

 a.  Defendants, Michael V. Gazza and Lawrence T. Simon, are hereby dismissed from this action.

 b.  the claims for punitive damages in Counts II, III, and IV are dismissed as against all defendants, and Plaintiffs may seek recovery of treble damages in Count II.

 c.  the claims for attorney's fees in Counts I, III, and IV are dismissed as against all defendants, but Plaintiffs may seek recovery of treble damages in Count II.

 d.  In all other respects, the motion (Doc. 35) is denied.

25

    4.  The three motions (Doc. 36, 37, and 39) to dismiss of
defendants Investors Abstract, Inc., Steve Paugh, and Lorie
A. Lehman; Albert C. Read, III, and Alicia N. Johnson; and
M.D. Everett, are denied.

                             /s/ William W. Caldwell
                            William W. Caldwell
                            United States District Judge