IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN L. SCOTT, :
MINNIE L. SCOTT, :
    Plaintiffs :
     :
    v. : CIVIL NO. 1:10-CV-0581
     :
LTS BUILDERS LLC, et al., :
    Defendants :

*M E M O R A N D U M*

I.  *Introduction*

This is a diversity action controlled by Pennsylvania law. Plaintiffs, John L. Scott and Minnie L. Scott, sued multiple defendants following Plaintiffs' purchase of real property in the Pocono Mountains area of Pennsylvania, with the intent of constructing their retirement residence there. Plaintiffs charge all defendants with participation in a scheme to defraud them. Their major allegation is that the defendants knowingly concealed from them the existence of an electrical utility easement on the property. The easement was allegedly so extensive it rendered the lot useless for the house Defendants supposedly led Plaintiffs to believe could be built there.

We are considering the motion for summary judgment of the "Read defendants": Albert C. Read, III, doing business as A.C. Read Appraisal Service; and Alicia N. Johnson, who worked for Read. These defendants provided the appraisal of the property that facilitated the real-estate transaction, and Plaintiffs allege the appraisal was fraudulent. In moving for summary judgment, the defendants argue the record shows

Plaintiffs never saw the appraisal before they completed the transaction so they cannot establish reliance, an essential element of the three claims against the Read Defendants: common-law fraud, a statutory consumer-protection claim, and negligent misrepresentation.

Upon review of the parties' briefs, we conclude that the moving defendants are entitled to judgment in their favor on these claims because Plaintiffs have failed to show justifiable reliance on the appraisal. Nonetheless, the moving defendants will remain in the case because Plaintiffs still have a claim against them for aiding and abetting the common-law fraud claim and statutory-violation claim against the other defendants.

II. *Standard of Review*

Under Fed. R. Civ. P. 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In pertinent part, parties moving for, or opposing, summary judgment must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters

2

stated." Fed. R. Civ. P. 56(c)(4). In deciding a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "'The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Meditz v. City of Newark,* 658 F.3d 364, 369 (3d Cir. 2011)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)).

With this standard in mind, we set forth the summary-judgment record the parties have established for the purposes of the Read Defendants' motion. We supplement that record with allegations from the second amended complaint which the moving defendants in making their motion do not contest.

III. *Background*

On March 15, 2008, plaintiff, John L. Scott, entered into a real estate sales agreement with defendant, LTS Realty Company, to purchase an unimproved lot and also entered into a construction agreement with defendant, LTS Builders LLC, to construct a house on the site.[1] (Defs.' Statement of Undisputed Material Facts (DSMF) ¶

---

[1] Other "LTS defendants" are Rene Giombetti, an agent for LTS Realty Company, who sold the parcel to John L. Scott; Michael V. Gazza, a broker for LTS Realty Company; and Lawrence T. Simon, an officer and agent for both LTS Realty Company and LTS Builders. By memorandum and order of December 15, 2011, we dismissed Gazza and Simon from the action. *Scott v. LTS Builders LLC*, 2011 WL 6294490, at *9 (M.D. Pa.).

The remaining defendants are: Investors Abstract, Inc., and Steve Paugh and Lorie A. Lehman, agents for Investors Abstract; and M.D. Everett, the owner of the lot who sold it to Plaintiffs.

1; Second Am. Compl. ¶¶ 34 and 40, and Exs. A and B to the second amended complaint).

The LTS defendants handled the arrangements for obtaining a loan from HSBC Mortgage Corporation, an abstract of title, a title policy, a survey endorsement, and for closing on the purchase. (Second Am. Compl. ¶ 41). LTS arranged for defendants Read and Johnson "to prepare a deceptive, misleading and fraudulent appraisal." (*Id.* ¶ 45).

The Appraisal Report is dated April 18, 2008, and was signed on April 21, 2008, by Johnson as the appraiser and Read as the supervisory appraiser. (Doc. 90-1, Ex. A, Appraisal Report, ECF pp. 1, 10). On May 9, 2008, a little over two weeks later, Plaintiffs closed on the property. (Doc. 90, DSMF ¶ 4).

The Appraisal Report contained the following information. John Scott is identified as the "Borrower" or "Borrower/Client," (Doc. 90-1, Appraisal Report, ECF pp. 1, 3), and HSBC Mortgage is identified as the "Lender." (Doc. 90-1, Appraisal Report, ECF pp. 3, 22). In response to a question on that portion of the report entitled, "Uniform Residential Appraisal Report," about "any adverse site conditions or external factors" such as "easements," the report stated: "No adverse easements . . . were observed." (*Id.*, ECF p. 5). In the appraiser's certification section, paragraph 21 permits "the lender/client" to give the appraisal report to "the borrower," and paragraph 23 allows "the borrower" to rely on the report "as part of any mortgage finance transaction." (*Id.*, ECF pp. 9 and 10).

4

In the "scope of work" section, the appraiser represents that: "Site and utility easements typical of the neighborhood likely exist but were not researched as part of the scope of work. The scope of work does not include any attempt to research the subject's title or legal documents." (*Id.,* ECF p. 19). That section also includes the following representation: "THE BORROWER IS SPECIFICALLY ADVISED NOT TO RELY ON THIS APPRAISAL REPORT TO DETERMINE CONDITIONS OF THE PROPERTY . . . ." (*Id.*). In that section, the appraiser also states that she "does not guarantee the lot will conform to all setbacks and other township requirements in order to build. . . . I invite the client to employ the services of other professionals such as surveyors, title specialists, zoning officers, etc. if the client has zoning concerns beyond the fact that the site allows for residential use and is improved/proposed with a residential dwelling." (*Id.*).

Finally, in the "comments" section on the last page of the Report, it reads:

THE INTENDED USE OF THIS REPORT IS FOR DECISION MAKING FOR POSSIBLE LOAN UNDERWRITING. THE INTENDED USER IS THE LENDER/CLIENT STATED ABOVE. WE ARE NOT OBLIGATED TO ANY OTHER PARTY THAT IS GIVEN A COPY BY THE INTENDED USER. THE APPRAISER IS NOT RESPONSIBLE FOR UNAUTHORIZED USE OF THIS REPORT AND NO OTHER USE IS INTENDED EXCEPT AS STATED ABOVE.

(Id., ECF p. 22).

Defendant Read has submitted an affidavit made upon "knowledge, information and belief." It reads as follows, in pertinent part:

   2. On April 11, 2008, I received a request for a residential real estate appraisal [of the property] directly from HSBC Mortgage . . . .

5

> 3. The April 11, 2008 request for appraisal from HSBC Mortgage was the first contact that I, or anyone at A.C. Read Appraisal Service had from any individual or entity regarding the property . . . .
>
> 4. I thereafter accepted HSBC Mortgage's request to perform a residential appraisal of the property . . . for purposes of decision making for possible loan underwriting.
>
> 5. The Appraisal Report . . . was completed at the request of, and for the sole use of, HSBC Mortgage.
>
> 6. The Appraisal Report was delivered directly to HSBC Mortgage and to no other party.
>
> 7. A.C. Read Appraisal Service was paid directly and solely by HSBC Mortgage for provision of the Appraisal Report.

(Doc. 90-3, Read affidavit, ECF pp. 1-2).

The affidavit also affirms that A.C. Read Appraisal Service did not contract for the appraisal of the property with: (1) Plaintiffs John L. Scott or Minnie L. Scott; (2) LTS Builders LLC or LTS Realty Company; (3) Investor's Abstract, Inc.; or (4) any individual or corporate defendants named in the case. (*Id.*, ECF pp. 2-3). Further, neither Read nor any employee of A.C. Reed Appraisal Service ever spoke to or communicated in any way with: (1) LTS Builders LLC, or LTS Realty Company, other than to obtain a time to pick up the building plans and specifications needed for the appraisal; (2) Investor's Abstract, Inc. regarding the appraisal; (3) any other individual or corporate defendants named in the case regarding the appraisal; or (4) Plaintiffs John L. Scott or Minnie L. Scott. (Doc. 90-3, Read affidavit, ECF pp. 2, 3).

In opposing summary judgment, Plaintiff admits the following: (1) Plaintiffs "never possessed, observed or read the Appraisal Report at any time prior to closing on the property on May 9, 2008," (Doc. 90, DSMF ¶ 4); (2) "Plaintiffs never communicated with the Read Defendants, or anyone associated with the Read Defendants, in any way prior to the closing on the property on May 9, 2008," (*id.*, DSMF ¶ 5; Doc. 90-2, Pls.' answers to interrogatories 2-6); (3) "Plaintiffs never met with the Read Defendants, or anyone associated with the Read Defendants, regarding the appraisal of the property," (Doc. 90, DSMF ¶ 6); (4) none of the following entities or individuals contracted with the Read Defendants for the appraisal: (a) Plaintiffs; (b) the LTS Defendants; (c) the Investor's Abstract Defendants; (d) any individual or corporate defendants named in the case, (*id.*, DSMF ¶¶ 7-10); and (8) the "Read Defendants were paid by HSBC alone for the Appraisal Report." (*Id.*, DSMF ¶ 12).

IV. *Discussion*

Defendants are named in the following three claims.[2] Count I is a claim against all defendants for common-law fraud. Plaintiffs allege that the defendants knowingly or recklessly made misrepresentations about the value of the property as improved, or aided and abetted each other in making them, and that Plaintiffs relied on these misrepresentations in buying the land and entering into the construction contract. Among these misrepresentations were the misrepresentations the Read Defendants

---

[2] Count IV is a claim for rescission against Everett and the LTS defendants.

made in the Appraiser's Report. Count II is a claim against all defendants for a violation of the catchall provision of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (CPL). 73 Pa. Stat. Ann. §§ 201-2(xxi), 201-3, and 201-9.2. Plaintiffs allege the defendants engaged in, or aided and abetted, unfair and deceptive acts and practices by knowingly or recklessly making these false statements of material fact. Count III is a claim against all defendants except Everett for negligent misrepresentation. Plaintiffs allege the defendants knew, or should have known, that Plaintiffs and the lender, HSBC Mortgage, were relying on the information supplied to engage in the transactions on the property.

All three of these claims have justifiable reliance as an essential element. *See Gibbs v. Ernst*, 538 Pa. 193, 207-08, 647 A.2d 882, 889 (1994)(common-law fraud); *Tran v. Metropolitan Life Ins.*, 408 F.3d 130, 135 (3d Cir. 2005)(common-law fraud and negligent misrepresentation); *Hunt v. United States Tobacco Co.*, 538 F.3d 217, 221-22 (3d Cir. 2008)(CPL claim). In moving for summary judgment, Defendants argue that Plaintiffs cannot show reliance because the record establishes that they never saw or read the Appraisal Report, or even communicated in any way with the Read Defendants, before they closed on the property on May 9, 2008.[3]

---

[3] Defendants also point to the language in the Appraisal Report stating that the borrower cannot rely on the Report and that the Report was intended to be used only by the lender/client, HSBC Mortgage, for deciding whether to make the loan. The language also specifically disclaimed any obligation to any other party HSBC might give the Report to. We consider these provisions irrelevant here because the record shows that Plaintiffs never saw the report nor knew its contents and because Plaintiffs are not making a contractual claim.

In opposition, Plaintiffs make four arguments on the justifiable-reliance element. First, they argue that their "reliance on the appraisal is intertwined with the reliance of their lender HSBC on the report. But for the fraudulent Appraisal Report, HSBC would not have committed to the loan and the Scotts would not have closed on the property." (Doc. 92, Opp'n Br. at p. 8). We reject this argument because it relates to the causation element of the three claims at issue, not to the justifiable-reliance element.[4] In using the words "but for," Plaintiffs essentially admit that the argument is based on but-for causation.

Second, Plaintiffs argue that the Read Defendants overlook paragraph 21 in the report that permits HSBC to give the Report to Plaintiffs and paragraph 23 that allows Plaintiffs to rely on the Report as part of any mortgage finance transaction. We fail to see the relevance of these paragraphs in the context of summary judgment. The record establishes that Plaintiffs never received a copy of the Report, so it is irrelevant that the Report may have authorized HSBC to give Plaintiffs a copy.

Third, Plaintiffs argue that their reliance was on "HSBC's acceptance of the appraisal to commit to the loan" and their reasonable expectation that the appraisal would be fair and honest. (Doc. 92, p. 12). We reject this argument. Justifiable reliance requires reliance on a misrepresentation by the defendant, not reliance on the conduct of a third party, or reliance on Plaintiffs' own expectations as to what the report would say.

---

[4] *Tran*, 408 F.3d at 135 n.8, lists the elements of a fraudulent- and negligent-misrepresentation claim and the requirement of causation; the misrepresentation has to result in damage or injury. *Hunt*, 538 F.3d at 22-23, mentions the need to show causation in a common-law fraud claim and in a CPL claim.

9

Fourth, Plaintiffs argue that, even if they did not see the Appraisal Report before the closing, under *Wilson v. Parisi*, 549 F. Supp. 2d 637 (M.D. Pa. 2008), reliance should be presumed. In *Wilson*, one of our Middle District colleagues did rule that, even if the plaintiff buyer of residential real estate did not see the appraisal until two or three years after the closing, the reliance element of a CPL claim against an appraiser could be presumed based on the material nature of the fraudulent misrepresentations in the appraisal. In so ruling, the court cited *Zwiercan v. General Motors Corp.*, 58 D.& C.4th 251, 2002 WL 31053838 (Pa. Common Pleas Ct. - Phila. Cnty. 2002), and *Drayton v. Pilgrim's Pride Corp.*, 2004 WL 765123 (E.D. Pa. Mar. 31, 2004).

We decline to follow *Wilson*. *Wilson* relied on *Zwiercan*, which had relied on *New York Life Ins. Co. v. Brandwene*, 316 Pa. 218, 172 A. 669 (1934), among other cases. After *Wilson* was decided, the Third Circuit held in *Hunt, supra*, involving a CPL claim, that cases like *Brandwene* cannot be used to presume reliance. 538 F.3d at 228 n.18. In support of its ruling, the Third Circuit cited *Aronson v. GreenMountain.com*, 809 A.2d 399 (Pa. Super. Ct. 2002), where the Pennsylvania Superior Court ruled that reliance could not be presumed in a CPL class-action claim. In doing so, the superior court distinguished *Brandwene* and cases like it on the following grounds. First, in those cases the plaintiff and defendant were in privity of contract. Second, in those cases the material misrepresentation had actually been made to the plaintiff. 809 A.2d at 404-05.[5]

---

[5] The superior court also noted that *Brandwene* and the other cases were not class-action cases, *id.*, but *Aronson* is not distinguishable on that basis alone.

10

Further, in *Hunt* the Third Circuit provided another reason why it would not apply presumptive-reliance cases to CPL claims; the Pennsylvania Supreme Court had recently ruled in *Toy v. Metropolitan Life Ins. Co.*, 593 Pa. 20, 46, 928 A.2d 186, 202-03 (2007), that CPL claims required justifiable reliance.

In the instant case, Plaintiffs and the Read Defendants are not in privity of contract, and Plaintiffs have failed to show that the Read Defendants made any material misrepresentations directly to them, even if the latter made material misrepresentations in the Appraisal Report. In light of *Aronson* and *Hunt*, cases like *Brandwene* do not apply here, and Plaintiffs have to show justifiable reliance, as we can see no reason why *Aronson* and *Hunt* should not apply to Plaintiffs' two other fraud claims, not just to the CPL claim. The Read Defendants are therefore entitled to summary judgment on the common-law fraud clam, the negligent misrepresentation claim, and the CPL claim as Plaintiffs have failed to show justifiable reliance on the Read Defendants' alleged misrepresentations.

However, our conclusion does not mean the Read Defendants are out of the case. As Plaintiffs correctly note, these defendants have failed to address Plaintiffs' aiding and abetting claim. In the common-law fraud claim and CPL claim, Plaintiffs alleged that the Read Defendants not only committed fraud but also that they aided and abetted the other defendants in committing fraud. *See Sovereign Bank v. Valentino*, 914 A.2d 415, 421 (Pa. Super. Ct. 2006)(recognizing a claim under Pennsylvania law for aiding and abetting fraud); *Adelphia Recovery Trust v. Bank of America*, 624 F. Supp. 2d

11

292, 309-10 (S.D.N.Y. 2009)(applying Pennsylvania law). *But see Zafarana v. Pfizer Inc.*, 724 F. Supp. 2d 545, 560 (E.D. Pa. 2010)("there is no cause of action for aiding and abetting fraud under Pennsylvania law"). We recognize that some of the uncontested facts the moving defendants have submitted might bear on whether Plaintiffs have a valid claim for aiding and abetting. However, we decline to decide whether Plaintiffs have a valid claim for the obvious reason that Defendants have not moved for summary judgment on the claim.

Additionally, when we view Plaintiffs' allegations that the Appraisal Report was fraudulent and that the Read Defendants participated in the scheme to defraud them, we cannot say that the evidence currently of record, which does not address these issues, establishes that Plaintiffs have no claim for aiding and abetting. *Cf. Wilson*, *supra*, 549 F. Supp. 2d at 660-61 (denying summary judgment on a RICO claim against an appraiser when there was sufficient evidence that the appraiser facilitated the RICO offense, in part by submitting a fraudulent appraisal).

As Plaintiffs note, discovery has yet closed, so our opinion may change. In the meantime, we will issue an order granting the Read Defendants summary judgment on the three claims on which Plaintiffs had to prove justifiable reliance but allowing the

12

claim for aiding and abetting the common-law fraud claim and CPL claim to proceed.[6]

                                              /s/ William W. Caldwell  
                                             William W. Caldwell  
                                             United States District Judge

Date: October 22, 2012

---

[6] We note that the moving defendants argue their summary-judgment motion should be deemed unopposed under Local Rule 7.6 because Plaintiffs' opposition was filed a week late. We decline to do so.

13

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN L. SCOTT, :
MINNIE L. SCOTT, :
    Plaintiffs :
:
    v. : CIVIL NO. 1:10-CV-0581
:
LTS BUILDERS LLC, et al., :
    Defendants :

*O R D E R*

AND NOW, this 22nd day of October, 2012, upon consideration of the motion (Doc. 89) for summary judgment by defendants, Albert C. Read, III, doing business as A.C. Read Appraisal Service; and Alicia N. Johnson, it is ordered that:

    1. The motion (Doc. 89) is granted as to Plaintiffs' claims against these defendants in: Count I for common-law fraud, Count II for a violation of the CPL, and Count III for negligent misrepresentation.

    2. The Clerk of Court shall enter judgment in favor of defendants, Albert C. Read, III, doing business as A.C. Read Appraisal Service; and Alicia N. Johnson, and against Plaintiffs on the common-law fraud claim in Count I, the CPL claim in Count II and the negligent-misrepresentation claim Count III.

    3. Defendants' motion for summary judgment is denied as to Plaintiffs' claim in Counts I and II for aiding and abetting fraud.

                                  /s/ William W. Caldwell
                                    William W. Caldwell
                                    United States District Judge